IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KARL B.,[1]  )
 )
       Plaintiff,  )
 )
vs.  ) Case No. 18-cv-1471-DGW[2]
 )
COMMISSIONER of SOCIAL  )
SECURITY,  )
 )
       Defendant.  )

## **MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff filed an application for both DIB and SSI in July 2014, alleging disability as of January 1, 2009. After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied both applications on March 27, 2018. (Tr. 16-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the Court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 10, 31.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to properly evaluate substance abuse under 20 C.F.R. § 404.1535.

2. The ALJ did not adhere to SSR 96-8p when he ignored and misstated evidence in his conclusion.

3. The ALJ erred in failing to identify the evidentiary basis of his assessment of plaintiff's residual functional capacity (RFC).

## Applicable Legal Standards

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the

plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Ibid.*

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of status post gunshot wound causing neuropathy in the right upper extremity and chronic abdominal pain, chronic gastritis, mild degenerative disc disease, depression, post-traumatic stress disorder, and chronic marijuana use.

The ALJ found that plaintiff had the RFC to perform work at the light exertional level, limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional stooping, crouching, crawling, and kneeling; and frequent reaching, handling, fingering, and feeling bilaterally. Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff was unable to do his past relevant work, which was classified at the heavy and medium exertional levels, while also making an alternative finding that he was able to do other jobs at the light exertional level which exist in significant numbers in the national economy.

### **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1968 and was almost 41 years old on the alleged onset date. He reported height was 5'7" and his reported weight was 153 pounds. (Tr. 31). He previously worked as a car washer, loader, lot driver, sales representative, and sign holder. (Tr. 159). Plaintiff submitted a function report stating that he had back pain, chronic abdominal pain, and unspecified mental disturbances. (Tr. 250). He said he had trouble sitting for long periods of time, had trouble tolerating long car rides, could not lift anything over 20 pounds, and could not walk long distances. (Tr. 247, 250). He also claimed he had nerve damage in his right hand. (Tr. 247). He complained that his sleep was affected by his depression, nightmares, and back discomfort. (Tr. 248). He reported that his daughter takes care of him, including providing reminders for personal grooming and medicine; along with preparing his meals. (Tr. 248, 249). He did acknowledge doing laundry, which took him about an hour. (Tr. 249). He did not drive or cook, and only went outside for doctor's appointments. However, he did indicate that he had the ability to grocery shop for 30 minutes. (Tr. 250).

2. **Evidentiary Hearing**

At the evidentiary hearing, plaintiff claimed that he was homeless. (Tr. 1051). Plaintiff reported weighing 142 to 144 pounds. He said that his normal weight was 175 to 180 pounds. (Tr. 1046). He stopped working in 2013 because of increased pain in his back that radiated through his left leg. He stated that the pain affected his ability to stand, limiting him to only 10 to 15 minute intervals on his feet. He also had trouble sitting up straight. (Tr. 1044). Plaintiff noted that

he received injections for his back pain, which were only effective for 5 hours. He said doctors would not prescribe narcotic pain medication for his back due to problems with his stomach. (Tr. 1045).

Plaintiff then explained the problems with his stomach. Plaintiff said that he had a lot of pain when he ate and had difficulty holding food down. Plaintiff stated that he experienced nausea 3 or 4 times a day. (Tr. 1046). Plaintiff reported that his abdominal pain had increased over time and he only had bowel movements once a week. (Tr. 1048). Plaintiff claimed that when he did go to the bathroom, he strained to evacuate his bowels, which hurt his lower back. (Tr. 1049).

A VE also testified. As there is no issue as to her testimony, it will not be summarized.

### 3. Medical Records

In November 2001, plaintiff was shot when someone attempted to rob him. He arrived at the emergency room and complained of pain in his abdomen. Staff took him immediately to the operating room for an exploratory laparotomy. He had a bullet hole in his sigmoid colon and underwent a Hartmann's segmental resection, including a colostomy.[3] Plaintiff also had multiple bullet holes in the small bowel and underwent multiple small bowel enterotomies. Plaintiff was discharged with instructions to establish follow up care with his primary care physician. (Tr. 384, 502-503). His Hartmann's procedure was eventually

---

[3] A Hartmann's procedure "is an operation to remove part of the sigmoid colon and/ or the rectum," "[f]orming a colostomy and leaving the other end of the bowel inside." "It is often performed in an emergency situation where there is a blockage of the bowel, a perforation of the bowel or of if there is a lot of infection (abscess) around the bowel." http://www.birminghambowelclinic.co.uk/treatments-hartmann%E2%80%99s-procedure/, visited on May 24, 2019.

reversed, and his colostomy bag was removed. (Tr. 384, 461).

In July 2014, Plaintiff visited the emergency room (ER) and complained of chronic back pain. He described the pain as sharp and stabbing with moderate onset. No neurological defects were observed. He was seen for the same issue two weeks prior and had a negative ultrasound. CT scans during this visit were performed. A CT scan of the lumbar spine was unremarkable, and no evidence of a fracture was seen. A CT scan of the abdomen and pelvis revealed no evidence of acute abnormality. There were postoperative changes with bowel anastomoses involving the left upper quadrant, but no evidence of bowel obstruction, bowel wall thickening, or surrounding inflammatory changes. He was discharged with a small prescription of Percocet and instructed him follow up with an outpatient doctor. (Tr. 319-324). Plaintiff returned to the ER again in September 2014 and was diagnosed with exacerbation of chronic back pain. Plaintiff was prescribed Percocet, ibuprofen, and promethazine; and discharged. (Tr. 605-607). In December 2014, plaintiff again returned to the ER. Plaintiff was diagnosed with acute chronic back pain and acute chronic abdominal pain, nonsurgical. Plaintiff was prescribed Percocet and ibuprofen; and discharged. (Tr. 612).

In January, February, and March of 2015, plaintiff visited the ER for acute exacerbation of chronic back pain; acute on chronic abdominal pain, nonsurgical; and an abscess. The abscess was treated with wound packing and later the packing was removed. Plaintiff was prescribed antibiotics, ibuprofen, Percocet, Norco, Valium, and cyclobenzaprine at differing times during these visits. Plaintiff was discharged in each case with instructions to follow up with a selected

outpatient provider. (Tr. 610-613).

Plaintiff established care with outpatient provider Health Delivery in March 2015. He complained of chronic back pain, weight loss, and lack of appetite due to abdominal pain. He stated he started smoking marijuana to increase his appetite, although he agreed to stop using the substance to get more pain medication. Plaintiff was diagnosed with major depression, chronic back pain, and chronic abdominal pain. Plaintiff was prescribed baclofen for spasms, ibuprofen, duloxetine, promethazine, Percocet, cyclobenzaprine, and tramadol. (Tr. 461-468). Plaintiff continued care with this provider and reported still having back pain, smoking marijuana, and noticed blood in his stool on one occasion. (Tr. 395-396, 400, 405, 457). He was taken off Percocet. (Tr. 393, 403). He further reported weakness and constipation. (Tr. 407). Additionally, positive pain was noted in his paravertebral muscles throughout the year. (Tr. 434, 450, 455, 460).

Plaintiff started physical therapy in April 2015. (Tr. 471). He was diagnosed with chronic pain, abnormal gait, lumbago, muscle spasms, and muscle weakness. (Tr. 637). He was as discharged after 5 sessions because he was unable to tolerate the therapy. (Tr. 471).

Plaintiff saw Dr. Samer Kais at the Central Michigan University (CMU) Hospital in June 2015. He complained of abdominal pain, rectal bleeding, and blood in his stool. He also stated that his appetite was poor. He was given a CT scan that revealed left sided small bowel anastomosis, which was read as normal but appeared somewhat thickened in the doctor's opinion. Dr. Kais diagnosed

plaintiff with chronic right flank pain; colicky LUQ abdominal pain; poor appetite; and marijuana use, continuous. He also noted that "the bullet is in the R perinephric region, behind the kidney and within the perinephric fat making it very unlikely that the bullet is causing any significant back pain, and especially unlikely that it is causing any L sided back pain as it is not within muscle and it is *very* distant from the spine." Dr. Kais referred plaintiff to a urologist for a second opinion. (Tr. 381-384, 930).

Plaintiff continued care at Health Delivery in 2016. Plaintiff continued to state his issue with back pain and it was also noted that plaintiff continued to complain of weakness, although he denied transient paralysis, paresthesia, seizures, syncope, tremors, vertigo, headaches, and mentation changes. (Tr. 400, 405, 407). A CT Scan of the lumbar spine was also performed, which found disc degeneration with disc bulge; and facet joint degeneration at the L4-L5 and L5-Sl level with spinal stenosis and bilateral neural foraminal stenosis. Imaging results also stated that subtle encroachment on the exiting nerves was not excluded and a clinical correlation for signs of radiculopathy was recommended. (Tr. 542).

Plaintiff returned to the ER in September 2016. He complained of fresh blood in his rectum intermittently during bowel movements since last month. He also reported dizziness, lightheadedness, nausea, and lower abdominal pain. (Tr. 717, 723). He was evaluated for acute GI bleeding which was felt to be probably hemorrhoidal. A CT scan was negative for small bowel obstruction and a small bowel series was done which was negative for obstruction. Plaintiff was given laxatives along with Anusol suppositories and was released 4 days later after

improving. (Tr. 717).

In June 2017, plaintiff returned to the ER after seeing his doctor earlier for nausea, vomiting, abdominal pain, and weight loss. His doctor had an observational x-ray completed that showed a possible small bowel obstruction, so he instructed plaintiff to go to the ER. (Tr. 772). Plaintiff did not report having fever or chills, but did report fatigue, generalized weakness, and decreased appetite. (Tr. 773, 776). He tested positive for marijuana in his urinalysis. (Tr. 782). A CT scan of the abdomen and pelvis found thickening and hyperemia of the gastric body (seen in infectious or inflammatory gastritis) and multiple prominent retroperitoneal and inguinal lymph nodes which were abnormally increased in number, and possibly reactive. (Tr. 775, 786). Plaintiff was discharged later the same day. (Tr. 791).

In July and August 2017, plaintiff saw Dr. Steven Hunt, a colon and rectal surgeon, for rectal pain and bleeding episodes. Dr. Hunt noted that he had a history of anxiety; chills or fevers; recent weight loss; light-headedness or dizziness; headaches; bleeding problems; joint or back pain; and muscle cramps. A CT scan revealed some retroperitoneal and inguinal lymphadenopathy. Dr. Hunt diagnosed plaintiff with an anal fissure, which he medically addressed. (Tr. 895-896, 897-898). Dr. Hunt ordered a gastroenterology consult with Dr. Deborah Rubin, which found that plaintiff's "[p]ain is likely multifactorial from chronic constipation, adhesions related to prior surgery, gastritis/GERD." (Tr. 827). A later esophagogastroduodenoscopy and colonoscopy showed chronic gastritis, 3 polyps in the transverse colon, diverticulosis in the descending colon,

and erythematous mucosa in the terminal ileum. (Tr. 905). He also had an ultrasound of his abdomen that was normal, apart from a 5 mm gallbladder polyp that did not require follow-up. (Tr. 918).

## Analysis

Plaintiff argues that the ALJ ignored evidence in his RFC findings that would undermine his conclusion. In assessing a plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). While the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings. *Ibid.* (citing *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001) and *Zurawski,* 245 F.3d at 888). Otherwise, it is impossible for a reviewing court to make an informed review. *Golembiewski,* 322 F.3d at 917 (citing *Smith v. Apfel,* 231 F.3d 433, 438 (7th Cir. 2000)).

First, the ALJ ignored an entire line of evidence. Plaintiff's medical history revealed that while seeing Dr. Hunt, Dr. Hunt ordered a gastroenterology consult with Dr. Deborah Rubin. In the notes on the consult, Dr. Rubin found that plaintiff's "[p]ain is likely multifactorial from chronic constipation, adhesions related to prior surgery, gastritis/GERD. Curiously, while Dr. Hunt's notes and diagnoses are detailed fairly well, the ALJ failed to mention this entire consult and, importantly, Dr. Rubin's opinion on the complexities of plaintiff's condition.

Second, the ALJ made blanket claims about medical findings in his decision that are inaccurate. In his decision, the ALJ stated that, "[t]hough the evidence

does show some unintentional weight loss in 2017, the evidence does not show that the claimant experienced weakness, dizziness, syncope, or other complications from this weight loss." (Tr. 28). While this claim has an issue with specificity, the largest problem is that it is wrong on its face. Throughout 2015, 2016, and 2017, plaintiff complained of weakness during medical visits. He was even diagnosed with muscle weakness in April 2015. Furthermore, in April 2016, plaintiff reported dizziness when visiting the ER. In 2017, Dr. Hunt even reported that he had a history of lightheadedness or dizziness.

Looked at singularly, these pieces of evidence may not be fatal. However, when the evidence is looked at together, a pattern does emerge. It appears that the ALJ left some evidence out that corroborated plaintiff's claims to increase the plausibility of his conclusion. This Circuit has rejected that approach. See, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Plaintiff's other argument, that the ALJ failed to properly evaluate substance abuse, namely marijuana, under 20 C.F.R. § 404.1535, does not fare as well. When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the ALJ is whether, were the applicant not a substance abuser, he still would be disabled. 20 C.F.R. § 404.1535(b)(1). If so, he is considered disabled independent of the substance abuse and entitled to benefits. 20 C.F.R. § 404.1535(b)(2)(ii); *Kangail v. Barnhart*, 454 F.3d 627, 628–29 (7th Cir. 2006). However, if, despite substance abuse, an ALJ determines that a plaintiff is not disabled, § 404.1535 is not implicated. See, *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Here, although the ALJ listed chronic

marijuana use as a severe impairment, he did not find plaintiff's limitations to be disabling and concluded that plaintiff could work at a light exertional level. Thus, § 404.1535 is not implicated here.

The mischaracterization and lack of consideration of evidence requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).[4]

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.
**IT IS SO ORDERED.**
**DATE: May 29, 2019.**

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Plaintiff also argues that the ALJ improperly weighed his credibility related to his limitations. Because remand is required based on the medical evidence, reconsideration of plaintiff's credibility will require a fresh look. Therefore, consideration of this issue is rendered unnecessary at this time.